**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **ERICA ROSA CHESTER,** | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| **v.** | | **Case No.: PWG 20-cv-627** |
| | * | |
| **KAISER FOUNDATION HEALTH PLAN** | | |
| **OF THE MID-ATLANTIC STATES, INC.,** | * | |
| | | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

Erica Rosa Chester, acting *pro se*, filed suit against her prior employer, Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), alleging violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e *et seq.* Specifically, Ms. Chester alleges that she was retaliated against and unlawfully terminated based on her race and sex.  Compl., ECF No. 1; Am. Compl., ECF No. 18.   Defendant has moved to dismiss Ms. Chester's complaint.  ECF No. 19.  I have reviewed the filings[1] and find a hearing unnecessary.  *See* Loc. R. 105.6 (D. Md. 2021).   Because Ms. Chester's Title VII claims are barred by the release she signed in her severance agreement with Kaiser, I shall GRANT Defendant's motion and DISMISS the Amended Complaint.

---

[1]      Mot. Mem., ECF No. 19-2; Resp., ECF No. 21; Reply, ECF No. 22; with the attached exhibits from both Plaintiff and Defendant as discussed below; and the Amended Complaint, ECF No. 18.

## BACKGROUND[2]

Ms. Chester was hired by Kaiser in February 2016 as Director of Corporate Communications. Am. Compl. ¶ 1. She was hired by Karen Blair, Vice President of Public Relations, Communications and Brand Management, and she reported to Jerald "Scott" Weier, Senior Director of Corporate Communications. *Id.* Mr. Weier informed Ms. Chester not to cross Kaiser's Chief of Staff, Laurie Cammisa,[3] and in mid-2017, another employee relayed to her that Ms. Cammisa hated Ms. Chester. *Id.* at ¶ 3. During a meeting on January 9, 2018, which Ms. Chester attended by telephone, Ms. Cammisa cut Ms. Chester off, raised her voice, and talked over her. *Id.* at ¶ 2. The other attendee at the meeting, Ata Isakovic, the Executive Administrator, stopped by Ms. Chester's office the next day and advised her to report Ms. Cammisa's actions during the meeting to Mr. Weier or Human Resources. *Id.* at ¶ 4. But Ms. Chester didn't want to "make waves" and advised Ms. Isakovic to "let the situation go." *Id.* at ¶ 5. Ms. Isakovic, however, later told Ms. Chester that she had spoken with the Vice President of Human Resources and reported that Ms. Cammisa's actions were unprofessional, and that Ms. Cammisa's treatment of Ms. Chester during the meeting was unacceptable. *Id.* at ¶¶ 5, 26

Ms. Chester returned from a scheduled vacation on January 17, 2018 to a "Communications All Hands" meeting, during which the Vice President of Communications announced that Mr. Weier's title was changing to the Senior Director of Public Affairs, which would add stakeholder

---

[2]    For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in her Complaint as true. *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011). I note, however, that there are documents, such as the Severance Agreement, attached to Defendant's motion as well as Plaintiff's response, which I may consider because it is integral to the complaint and its authenticity is not disputed. *See Secretary of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

[3]    I note that Defendant referred to her as Laura Cammisa. Mot. Mem. 2.

engagement to his existing responsibilities. *Id.* at ¶ 9. Mr. Weier met with Ms. Chester on January 19, 2018—the meeting had been rescheduled from January 17, 2018, and Ms. Chester expected it to be her performance review. *Id.* at ¶¶ 7, 8, 10. Unexpectedly, Kaiser's Human Resources Consultant, Ms. Williams-Valentine, also attended the meeting, and Ms. Chester was informed by Mr. Weier that effective immediately, her job was being eliminated due to new responsibilities being added to her role, and she would have to apply for the new position. *Id.* at ¶¶ 10-12. The title of the new role was Director Employee Engagement and Leadership Communications, and she was given the weekend to decide if she wanted to apply for the job. *Id.* at ¶ 12. Ms. Chester was also given a Severance Agreement, which she was told she must sign by February 8, 2018 regardless whether she was going to apply for the new job, and she was told that she did not have to return to work but would be paid until March 23, 2018 by payroll, at which time severance would start being paid. *Id.* at ¶ 13. Mr. Weier also told her that she was a great worker, the elimination of her job had nothing to do with performance, and that she would receive her full bonus and vacation pay. *Id.* at 16. Ms. Chester's expected performance review did not occur and was not scheduled. *Id.*

Ms. Chester compared the new job description to her prior role and felt that it had fewer rather than more responsibilities. *Id.* at ¶¶ 12, 14. Ms. Chester, who is a black female, alleges that she instantly knew that she was being treated differently from Mr. Weier, who was a white male, and did not have to apply for his new job, which also had a title change and additional responsibilities, nor was he sent home with a severance agreement. *Id.* at ¶ 17. On January 23, 2018, Ms. Chester met with Ms. Williams-Valentine (Human Resources) and told her that she felt she was being retaliated against because of Ms. Isakovic's report to the Vice President to Human Resources, and she described other incidents that she felt were discriminatory, such as not being

allowed to backfill a position on her team. *Id.* at ¶¶ 18, 27. Ms. Chester also advised that she had no intention of applying for a job that she was already doing. *Id.* at ¶¶ 18-21.

On February 5, 2018, Ms. Chester contacted Ms. Williams-Valentine by email to ask about her claim of discrimination. *Id.* at ¶ 22. Ms. Williams-Valentine responded that she intended to completely review Ms. Chester's claims and respond but noted that Ms. Chester's discrimination claim was not connected to her severance. *Id.* Ms. Chester alleges that she also emailed the Vice President of Human Resources about Ms. Isakovic's report and asking why Mr. Weier did not have to apply for his job. *Id.* at ¶ 23. Getting no response, Ms. Chester alleges that she then consulted with the Equal Employment Opportunity Commission ("EEOC") and was advised that she would not waive her Title VII rights by signing the Severance Agreement, so she signed it on February 7, 2018. *Id.* at ¶ 24. Ms. Williams-Valentine never responded to Ms. Chester's claim of discrimination. *Id.* at ¶ 27.

After signing the Severance Agreement, Ms. Chester alleges that she experienced further retaliation. *Id.* at ¶ 28. Specifically, she alleges that did not receive payment of all accrued wages, bonus, unused Paid Time Off, or vacation pay in her March 23, 2018 paycheck as stated in the Severance Agreement. *Id.* at ¶¶ 28-30. Further, when she handed in Kaiser's property on March 23, 2018, she was handed a "sticky note" showing the calculation of her bonus indicating that it would be cut an additional 50% due to a "needs improvement" performance review. *Id.* at ¶ 31. Ms. Chester never got her 2017 performance review from Mr. Weier, although the rest of the team received performance reviews. *Id.* at ¶¶ 32-33.

On March 27, 2018, Ms. Chester started the process of filing an EEOC complaint based on discrimination and retaliation. *Id.* at ¶ 33.[4]  She also filed a complaint with the Department of Labor, Licensing and Regulation ("DLLR") on the advice from EEOC that it would expedite payment of the bonus shortage. *Id.* at ¶ 34.  Following the DLLR filing, all of Ms. Chester's severance payments were late. *Id.* at ¶ 40.  On May 4, 2018, the DLLR received a letter from Kaiser's in-house lawyer with a copy of her year-end performance review indicating that she was a poor performer and didn't earn a bonus in 2017, although Ms. Chester had never seen the review, she had not signed it, and it was inconsistent with emails and verbal reports of her performance. *Id.* at ¶¶ 35-36.  Ms. Chester also alleges that it was dated outside the Performance Review period, which closed on March 2, 2018. *Id.* at ¶¶ 33, 37.

Ms. Chester received her notice of the right to sue from the EEOC on December 13, 2019, and she timely filed this lawsuit on March 9, 2020. *See* Notice, ECF No. 1-1.  She asserts two causes of action against Kaiser under Title VII: (1) Discriminatory termination based on race and sex; and (2) Retaliation. Ms. Chester alleges that she has suffered from stress, lost wages due to her extended unemployment for the remainder of 2018, and she experienced financial hardship. *Id.* at ¶ 42.  She seeks the remainder of her base salary for 2018, which she calculates at $78,732.64, the balance of her bonus ($3,275.98) and $50,000 in punitive damages because of the false performance review and defamatory content in Kaiser's letter to the DLLR.

Defendant contends that Ms. Chester has failed to state plausible claims because she failed to exhaust her administrative remedies, her claims are barred by the general release in the

---

[4]     The EEOC Charge of Discrimination is dated April 11, 2018.  Resp. Ex. H, ECF No. 21-8.  It appears that it was amended as late as November 27, 2018.  *See* Termination of Investigation Order, Resp. Ex. I, ECF No. 21-9.  Also, the Defendant provided a copy of the Complaint of Alleged Discrimination in Employment filed with the Office of Human Rights, Montgomery County, dated February 20, 2019.  Def.'s Mot. Ex. B, ECF No. 19-4.

Severance Agreement, and she does not allege facts that establish a *prima facie* case of retaliation or discrimination.  Mot. Mem. 1-2.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6).  Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79.  *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written

instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).  However, if the Court considers matters outside the pleadings and related integral documents referenced in or attached to it, the Court must treat the motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).

I have considered documents attached to Defendant's motion: (1) the Severance Agreement (ECF No. 19-2); (2) Ms. Chester's Complaint to Office of Human Rights, Montgomery County, dated February 20, 2019 (ECF No. 19-4); (3) the Kaiser paystub dated April 6, 2018 (ECF No. 19-5); and (4) a letter from Kaiser to Maryland DLLR, dated May 4, 2018.  All of these are referenced and relied on in Ms. Chester's complaint, and she has not disputed their authenticity. Ms. Chester also attached some of these documents to her response in opposition to the Defendant's motion, such as the Severance Agreement (ECF No. 21-2), the April 6, 2018 and other paystubs (ECF No. 21-10), and the Kaiser letter to Maryland DLLR (ECF No. 21-7), along with numerous email and letter correspondence, and a copy of her EEOC filing (ECF No. 21-9), which I also considered as integral to  the pleadings.

Finally, while courts generally should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," they may nevertheless dismiss complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Turner v. Kight*, 192 F. Supp. 2d 391, 398 (D. Md. 2002). A federal court must liberally construe pleadings filed by self-represented litigants to allow them

fully to develop potentially meritorious cases. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party, particularly when that party is self-represented. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

## ANALYSIS

### I.     Plaintiff Exhausted her Administrative Remedies

Under Title VII, before filing suit in federal court, a plaintiff must first exhaust her administrative remedies by filing a charge with the EEOC. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012).   A plaintiff only exhausts her administrative remedies as to "'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint.'" *Van Durr v. Geithner*, No. 12–2137–AW, 2013 WL 4087136, at *4 (D. Md. Aug. 12, 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996)).  "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000) (citing *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)); *see also Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) ("An administrative charge of discrimination does not strictly limit a Title VII suit which may follow . . . .").  The plaintiff's administrative and judicial claims need to be "reasonably related," *Smith*, 202 F.3d at 247, "not precisely the same," *Sydnor*, 681 F.3d at 595. A plaintiff fails to exhaust her administrative remedies if her administrative charges reference "different time frames, actors, and discriminatory conduct" such

that the "administrative charges and the evidence at trial describe two different cases." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506, 512 (4th Cir. 2005).

Kaiser argues that Ms. Chester failed to exhaust her administrative remedies with respect to her allegations of late severance payments, late vacation and bonus payments, an incomplete bonus payment, and defamatory comments about her performance. Mot. Mem. 1, 11-12, 16, 18. Not so. Ms. Chester's concerns about the payments are clearly reflected in the EEOC Termination of Investigation Order, ECF No. 29-1 at 4-5. In the administrative proceedings, she provided supporting documentation such as the email correspondence between her and Kaiser employees regarding the timeline of her paychecks and eligibility for a bonus. *Id.* And she alleged defamation in both her EEOC claim and in her correspondence with DLLR. *Id.*; *see also* Resp. Ex. G, ECF No. 21-7 (responding to Kaiser's letter regarding her 2017 bonus).

The facts alleged in Ms. Chester's amended complaint involve claims of discrimination based on race, sex, and retaliation for protected activity by the same actors at the same place of work. This is not a case in which "the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Sydnor*, 681 F.3d at 595 (citation omitted). Ms. Chester's underlying claims have not changed and reasonably follow from the facts alleged in Plaintiff's EEOC complaint and subsequent investigation. Therefore, Ms. Chester has not failed to exhaust her administrative remedies by failing to include the same relevant facts in her EEOC charge of discrimination. *See Sydnor*, 681 F.3d at 594.

## II.     Severance Agreement Bars Plaintiff's Claims

Defendant also contends that Ms. Chester's claims of discrimination and retaliation are

barred by the general release of all claims included in the Severance Agreement that she signed.

Mot. Mem. 1-2, 20, 22.

On February 7, 2018, Ms. Chester signed a Severance Agreement and General Release,

which included the following provision:

> Employee releases and forever discharges Employer and any
> affiliated or related companies, including, but not limited to Kaiser
> Foundation Health Plan, Inc., . . . (the Releasees"), from any and all
> claims of any kind, known and unknown, arising out of or related to
> Employee's employment with Employer or the termination of
> Employee's employment.  This release includes all claims which
> Employee has now or which arise in the future against the Releasees
> based on any act, event or occurrence up to the date of Employee's
> signing of this Agreement and Release.  This release includes, but is
> not limited to, all claims based in tort or contract, or under any
> federal, state or local statutes, ordinances, regulations, Executive
> Orders, or common law, including, but not limited to the Age
> Discrimination in Employment Act, Title VII of the Civil Rights
> Act, the Americans with Disabilities Act, the Family and Medical
> Leave Act, the Maryland Code, the Montgomery County Code, or
> any claim based on alleged discrimination, breach of contract or
> public policy, wrongful or retaliatory discharge and all claims for
> compensation, vacation, wrongful denial of insurance and employee
> benefits.
>
> Employee expressly acknowledges that this Agreement and
> Release includes a full and final release of all claims arising out of
> or related to Employee's employment with Employer that Employee
> did not know or suspect to exists at the time Employee signed this
> Agreement and Release, and that the payments and benefits
> provided by Employer under this Agreement and Release are also
> for the release of those unknown claims.

Severance Agreement 3 ¶¶ 4-5, Mot. Ex. A, ECF No. 19-2; Resp. Ex. B, ECF No. 21-2

Ms. Chester asserts that the Severance Agreement became void on March 24, 2018, when

Kaiser failed to pay her as agreed, which she contends was a violation of Paragraph 2, Section A.

10

Resp. 2, 9, 16-17. Section A, paragraph 2 of the Severance Agreement states: "Employee will receive severance pay in the form of installment payments that are paid on the regular payroll schedule.  These payments will begin within sixty (60) days of the Employee's Termination Date [March 24, 2018] . . . ."  Therefore, Kaiser's severance payments were due to begin no later than May 23, 2018, not on the termination date of March 24, 2018; they were not late in violation of the Severance Agreement. Ms. Chester does not allege that the severance payments were not made, and she provides paystubs that show the payments were made, nor does she allege that other severance compensation was withheld (medical benefits or outplacement services). *See* Resp. 9-11, 15-16, Ex. J. Rather, she asserts that payments were not timely as she had been promised,[5] or that other non-severance payments and benefits (such as vacation pay and bonus) were less than promised or late.  *Id.* at 15-16.  Further, as Defendant notes in its reply, Ms. Chester accepted the payments as made, which would have the effect of ratifying the contract even if it were voidable. *See* Reply 11-13 (citing *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 362-63 (4th Cir. 1991)).

While an employee's rights under Title VII may not be waived prospectively, an employee may waive her causes of action under Title VII as part of a voluntary settlement if there is a knowing and intelligent waiver.  *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51-52 (1974). "Courts have, in the employment law context, commonly upheld releases given in exchange for additional benefits." *Krupczak v. DLA Piper LLP (US)*, No. CV WMN-16-23, 2016 WL 4013640,

---

[5]     The "promises" that Ms. Chester refers to were statements made by Kaiser employees prior to the signing of the Severance Agreement, which "supersede[s] any and all prior agreements and understandings between the parties" regarding the subjects addressed in the Severance Agreement. Severance Agreement ¶ 15. In addition, by signing the Severance Agreement, Ms. Chester acknowledged that she had "not relied upon any representations, statements, promises or understandings that are not expressly written in [the Severance Agreement]." *Id.*

at \*5 (D. Md. July 27, 2016), *aff'd*, No. 16-1980, 2016 WL 7338497 (4th Cir. Dec. 19, 2016) (quoting *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 11 (1st Cir. 1997)).

Courts in the Fourth Circuit have applied both the state law of contracts approach and the totality of the circumstances test to determine the validity of a release. *See Shaw v. N. Carolina Dep't of Pub. Safety*, 372 F. Supp. 3d 307, 309-310 (M.D.N.C. 2019) (noting that some courts have cited cases that look to state law, while other courts have cited *Cassiday v. Greenhorne & O'Mara, Inc.*, 63 F. App'x 169 (4th Cir. 2003), an unpublished Fourth Circuit opinion in which the court approved the district court's determination of a knowing and voluntary waiver of rights under Title VII based on the totality of the circumstances). Courts that apply ordinary contract principles to determine the validity of a release "turn to the appropriate state's law for guidance."[6] *O'Shea*, 930 F.2d at 362.[7] Under this standard, the Severance Agreement "operate[s] on contract principles, and thus [its] preclusive effect . . . should be measured by the intent of the parties. Where the parties' intent is clear from the unambiguous terms of the contract, construed as a whole, [courts] need not and cannot resort to extrinsic evidence of intent." *Bala v. Va. Dep't of Conservation and Recreation*, 614 F. App'x 636, 639 (4th Cir. 2015) (Title VII); *see Coyne v. Omnicare, Inc.*, No. CCB-14-1225, 2014 WL 4384629, at \*4 (D. Md. Sept. 3, 2014) (finding that where the terms of the agreement were "unmistakably clear," the agreement barred the employee's FMLA and state law claims).

---

[6]  I note that the Severance Agreement provides that it "shall be construed and governed by the laws of the State of Maryland." Severance Agreement ¶ 11.

[7]  The passage of the Older Workers Benefits Protection Act ("OWBPA"), which was passed after the Fourth Circuit's decision in *O'Shea*, superseded the precise holding of *O'Shea* in the context of claims under the ADEA. *Kendall v. City of Chesapeake, Va.*, 174 F.3d 437, 441 n. 1 (4th Cir. 1999). However, the OWBPA did not amend Title VII, the statute at issue in this case.

The factors under the totality of circumstances test include: (1) the employee's education and business experience; (2) the respective roles of the employer and employee in determining the terms and conditions of the waiver; (3) the clarity of the agreement; (4) the time the employee had to study the agreement; (5) whether the employee had the advice of counsel; (6) whether the employer encouraged the employee to seek the advice of counsel and whether the employee had sufficient time to do so; and (7) the waiver's consideration. *Cassiday v. Greenhorne & O'Mara, Inc.*, 220 F. Supp. 2d 488, 493 (D. Md. 2002), *aff'd*, 63 F. App'x 169 (4th Cir. 2003).

Regardless of applying either the state law of contracts approach or the totality of the circumstances test, the clarity of a purported waiver is significant. *Shaw*, 372 F. Supp. 3d at 310. Here, the plain language of Ms. Chester's Severance Agreement with Kaiser unambiguously indicates that she agreed to release Kaiser "from any and all claims of any kind, known and unknown, arising out of or related to Employee's employment with Employer or the termination of Employee's employment…[including] **Title VII of the Civil Rights Act**" (emphasis added). Right before Ms. Chester's signature is a bolded paragraph that states:

> By signing this Agreement and Release, Employee states that: Employee has read it; Employee understands it and knows that Employee may be giving up important rights; Employee agrees with the terms and conditions in it; Employee is advised to and is aware of Employee's right to consult an attorney before signing it; and Employee has signed it knowingly and voluntarily and as a complete release and waiver of any and all claims through the date Employee signs this Agreement and Release.

Severance Agreement ¶13. Given the unmistakable and unambiguous language in the Agreement, Ms. Chester's Title VII claims are barred by the release that she knowingly and voluntarily entered into with Kaiser.

If I determine the validity of the Severance Agreement by reviewing the totality of the circumstances surrounding its execution, the factors still weigh in favor of Kaiser. First, Ms.

Chester had ample business experience, given that she was hired by Kaiser as the Director of Corporate Communications. Am. Compl. ¶ 1. The express terms of the Agreement encouraged her to seek counsel, Severance Agreement ¶ 13, she was given 21 days to consider the Agreement and an additional 7 days following the execution of the Agreement to revoke and preserve any rights she had against Kaiser, *id.* ¶ 14. Thus, Ms. Chester had sufficient time to study the 5-page agreement prior to signing, and she had an opportunity to change her mind after signing. Finally, Ms. Chester received adequate consideration for her waiver of claims in the form of eight weeks pay, two months of medical and dental benefits, and six months of outplacement services. *Id.* ¶ 2. Based upon the totality of the circumstances, Ms. Chester waived her causes of action under Title VII as part of the Severance Agreement, and such consent to the release was voluntary and knowing. Accordingly, her Title VII claims within the scope of the release are barred.

Ms. Chester's claims "based on alleged discrimination, . . . wrongful or retaliatory discharge and all claims for compensation, vacation . . . ." are within the scope of the release. Severance Agreement ¶ 4.  This includes her claims related to her bonus payment as a form of compensation.  Accordingly, I shall grant Defendant's motion to dismiss Ms. Chester's Amended Complaint because her claims are barred by the Severance Agreement.

## ORDER

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 19, is GRANTED.  Plaintiff's Amended Complaint is DISMISSED WITH PREJUDICE. The Clerk is directed to CLOSE THIS CASE.

Date:   September 17, 2021                                 _____/S/_____
                                                                            Paul W. Grimm
                                                                            United States District Judge